

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-10-2004

# Lewis v. Johnson

Precedential or Non-Precedential: Precedential

Docket No. 01-1036P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lewis v. Johnson" (2004). *2004 Decisions.* Paper 894.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/894

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

_____

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

_____

No. 01-1036

_____

CHARLES THOMAS LEWIS,

Appellant

v.

PHILIP L. JOHNSON, Superintendent,
SCI-Pittsburgh; MIKE FISHER,
Attorney General of Pennsylvania,

Appellees

_____

Appeal from the Order denying
Petition for Writ of Habeas Corpus
and denying a Certificate of
Appealability entered on December 8,
2000, in the United States District Court
for the Western District of Pennsylvania

(D.C. Civil Action No. 00-cv-1500)

District Judge: Hon. William L. Standish

_____

Argued June 26, 2003

_____

* Hon. Petrese B. Tucker, United
States District Court Judge for the

Before: SLOVITER, AMBRO,
Circuit Judges, and TUCKER,*
District Judge

(Opinion Filed   March 10, 2004 )

_____

Michael D. Bartko, Esquire (Argued)
Suite 401
210 Grant Street
Pittsburgh, PA  15219

          Attorney for Appellant

Ronald M. Wabby, Jr., Esquire (Argued)
Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA  15219

          Attorney for Appellees

_____

OPINION OF THE COURT

TUCKER, District Judge.

     This matter comes to us on appeal from the district court's denial of Appellant Charles Thomas Lewis's application for writ of habeas corpus, seeking relief from his state conviction on grounds his Sixth Amendment right to effective assistance of counsel was violated. Specifically, Lewis contends that his trial counsel's failure to file a notice of appeal constituted constitutionally-

_____

Eastern District of Pennsylvania, sitting by designation.

deficient performance within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984), and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), and deprived him of his first appeal of right. In accordance with the foregoing, we reverse the district court's order denying habeas relief and remand with instructions that a writ be issued conditioned on the Commonwealth reinstating *nunc pro tunc* Lewis's right of first appeal.

## I.  BACKGROUND

### A.  Trial Proceedings

Lewis is presently an inmate at the State Correctional Institution at Pittsburgh where he is serving a 30 to 60 year sentence imposed by the Pennsylvania Court of Common Pleas of Allegheny County ("trial court") following his conviction on six counts of robbery and nine other criminal offenses. Lewis pleaded guilty to the charges on January 27, 1987, and was sentenced on March 3, 1987. Lewis was sentenced to six consecutive 5 to 10 year terms for each robbery count, to be followed by eleven years of probation for the bad checks and firearms charges. Lewis was represented by John Elash, a court-appointed attorney, during the guilty plea and sentencing proceedings. Following the announcement of the sentence, the trial judge informed Lewis of his right to file post-trial motions challenging the validity of his guilty plea or requesting modification of the sentence within 10 days of the proceeding.

On March 12, 1987, nine days following his sentencing, Lewis filed a timely motion *pro se* in the trial court challenging the validity of his guilty plea on several grounds, including ineffective assistance of counsel. On April 10, 1987, trial counsel filed a "Motion for Leave to Withdraw Guilty Plea," which the trial court summarily denied without opinion. The trial court did not rule on Lewis's *pro se* motion and the parties indicate that it remains pending. No appeal was taken from either the judgment of sentence or the trial court's ruling denying the counseled motion to withdraw the guilty plea.

### B.  First Petition for Post-Conviction Relief Under State Law

On February 1, 1988, Lewis filed his first post-conviction petition *pro se* pursuant to the Pennsylvania Post Conviction Hearing Act ("PCHA"), 42 Pa.C.S. § 9541 *et seq,*[1] in the Common Pleas Court of Allegheny County. Counsel was appointed and an amended petition was subsequently filed. Among the issues raised in the PCHA petition was ineffective assistance of counsel based on

---

[1] The PCHA was repealed on April 13, 1988, and superseded by the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. It appears from the record that Lewis may have filed his PCHA petition on November 25, 1987, *see* Appendix, Vol. 1 at 105, 231, but we use the date cited in the magistrate judge's report and recommendation.

2

trial counsel's: (1) failure to move to withdraw Lewis's guilty plea when the trial court did not accept the alleged plea agreement and sentence Lewis to 5 to 10 years on each robbery count running concurrently rather than consecutively; (2) failure to appeal the trial court's denial of Lewis's motion for leave to withdraw the guilty plea "despite having a meritorious argument that the guilty plea was unlawfully induced"; and (3) failure to file a direct appeal from the denial of the post-trial motion and judgment of sentence.[2] Appendix, Vol. 1 at 117. Lewis's PCHA petition was denied following an evidentiary hearing. Lewis appealed the decision to the Superior Court, which addressed the sole of issue of whether Lewis was denied his right of direct appeal. The Superior Court concluded that its prior decision in *Commonwealth v. Dockins*, 471 A.2d 851 (Pa. Super. 1984), which holds that "trial counsel cannot be found ineffective for failing to file a direct appeal when not requested to do so," was controlling. The court affirmed the denial of Lewis's petition for post-conviction relief under the PCHA based on its conclusion that:

> [t]rial counsel admitted discussing the possible grounds for appeal and mentions that none of the grounds were of appellate

merit. The only evidence indicating the desire to appeal was provided in the appellant's testimony at the hearing on the PCHA petition. However, in reviewing the transcript of the hearing, we find nothing in the record to support the appellant's testimony. The PCHA court resolved the issue of credibility in favor of trial counsel. That determination will not be disturbed on appeal. We therefore adhere to the holding in *Dockins*,... providing that trial counsel cannot be found ineffective for failing to file a direct appeal when not requested to do so.

Appendix, Vol. II at 385. Lewis's petition for allocator to the Pennsylvania Supreme Court appealing the Superior Court's ruling was denied.

### C. Second Petition for State Post-Conviction Relief

Lewis, represented by counsel, filed a second petition for post-conviction relief on February 14, 1995, pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Lewis again contested the validity of his guilty plea and alleged trial counsel was ineffective on a number of grounds, to include for failing to take direct appeal

---

[2] Lewis raised these same claims in the PCHA petition that he filed *pro se*. Appendix, Vol. 1 at 110.

from the judgment of sentence which, Lewis contended, was contrary to the terms of his guilty plea. Another evidentiary hearing was held, and the PCRA petition denied thereafter. Lewis appealed the decision to the Superior Court. The court disposed of the question of Lewis's right to a direct appeal in a footnote, holding that "his claim was meritless" since the court had previously decided the claim against him when it adjudicated his first post-conviction petition under the PCHA, and held that *Dockins* precluded relief. Appendix, Vol. II at 389 n.2 (citing *Commonwealth v. Lewis*, No. 978 Pittsburgh 1989 (Pa. Super. Ct. filed July 18, 1990)). Lewis's petition for leave to appeal this decision to the Pennsylvania Supreme Court was denied.

## D.    Federal Habeas Petition

Following the exhaustion of his state remedies, Lewis filed a timely *pro se* petition for writ of habeas corpus in the United States District Court for the Western District of Pennsylvania on August 4, 2000. In his petition, Lewis alleged, *inter alia*, that the decisions of the Commonwealth courts ran counter to clearly established federal law. Specifically, Lewis contended that his trial counsel was ineffective for failing to file a direct appeal from the trial court's denial of his motion for leave to withdraw his guilty plea and the judgment of sentence. The district court referred the case to the magistrate judge who addressed only the question of whether trial counsel was ineffective for causing Lewis to enter a guilty plea that was not voluntary and intelligent. Concluding that the state courts' resolution of this question was not contrary to clearly established law, the magistrate judge recommended that Lewis's petition for habeas relief be denied.

Lewis timely filed objections to the magistrate's report and recommendation, arguing that the magistrate judge failed to (1) review his claim of ineffectiveness arising from trial counsel's failure to take a direct appeal, and (2) made no determination as to whether the record supported the state courts' finding that he had not asked trial counsel to take an appeal. Lewis further argued that "counsel denied assistance by unconstitutionally abandoning his assignment to my case during critical judicial proceedings without filing an appeal." Appendix, Vol. III at 567. In support of his objections, Lewis cited to the Supreme Court's decisions in *Flores-Ortega* and *Douglas v. California*, 372 U.S. 353 (1963). By order, the district court adopted the magistrate judge's report and recommendation and denied Lewis's petition for federal habeas relief.

Lewis filed a timely notice of appeal in this court. We granted Lewis's application for a certificate of appealability to consider whether trial counsel was ineffective for failing file a direct appeal.

4

## II. DISCUSSION

### A. Standard of Review

Our jurisdiction to review a district court's order denying a state inmate's petition for habeas relief is derived from 28 U.S.C. §§ 1291, 2253. Where, as in this case, "the District Court relied exclusively on the state court record and did not hold an evidentiary hearing, our review of its decision is plenary." *Moore v. Morton*, 255 F.3d 95, 103 (3d Cir. 2001) (citation omitted). Lewis, a state inmate seeking relief from his state court conviction, filed his federal habeas petition in 2000; thus our adjudication of this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which, in relevant part, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). The AEDPA "modifie[d] the roles of federal habeas courts in reviewing petitions filed by state prisoners." *Williams v. Taylor*, 529 U.S. 362, 403 (2000). Under this new statutory rubric, "[w]e are to review the state court's determinations on the merits only to ascertain whether the court reached a decision that was 'contrary to' or an 'unreasonable application' of clearly established Supreme Court law, or whether it made an 'unreasonable determination' of the facts." *Marshall v. Hendricks*, 307 F.3d 36, 51 (3d Cir. 2002). "[T]he determination whether or not a rule is clearly established at the time a state court renders its final judgment of conviction is a question as to which the 'federal courts must make an independent evaluation.'" *Williams*, 529 U.S. at 382 (quoting *Wright v. West*, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring in judgment)). The AEDPA does, however, confine the authorities on which federal courts may rely in making this determination to the decisional law of the Supreme Court, that is, the "Federal law, as determined by the Supreme Court of the United States." *Id.* at 381-82 (quotation omitted).

The question in this case is whether Lewis's trial counsel was ineffective for not filing a notice of appeal. Lewis relies on the Supreme Court's decision in *Flores-Ortega*, which held that criminal defense attorneys have a constitutional duty to consult and advise defendants of their appellate rights. *Flores-Ortega* was decided after Lewis's conviction was finally adjudicated, thus we certified two questions in our order granting Lewis's appeal. The first asks whether, in light of *Strickland* and *Flores-Ortega*, the Commonwealth courts' "application of the rule of *Commonwealth v. Dockins*, [*supra*], to appellant's claim resulted in a decision that was 'contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States[.]' 28 U.S.C. § 2254(d)(1)." As an antecedent to this question, we instructed that the parties "first address the question to what extent the holdings of *Flores-Ortega* constitute 'clearly established federal law.' *See Williams v. Taylor*, [*supra*]." We begin our inquiry addressing this latter question.

## B. *Teague* Analysis

### 1.

"The threshold question under the AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams*, 529 U.S. at 390. In *Williams*, the Supreme Court held that this limiting provision of the AEDPA "bears only a slight connection" to the nonretroactivity principle articulated in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny except to the extent that "whatever would qualify as an old rule under our *Teague* line of cases will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1)." *Williams*, 529 U.S. at 412 (citation omitted). "The nonretroactivity principle *prevents* a federal court from granting habeas corpus relief to a state prisoner based on a [new] rule announced after his conviction and sentence became final." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994).

As we have explained, "*Teague* teaches that the federal courts in habeas corpus proceedings should be reluctant to apply new rules of federal jurisprudence in state court cases decided before such new rules were handed down. Principles of comity and finality counsel that we maintain a circumscribed scope of habeas review." *Banks v. Horn*, 271 F.3d 527, 543 (3d Cir. 2001)*, rev'd on other grounds by Horn v. Banks*, 536 U.S. 266 (2002), *and reaff'd by Banks v. Horn*, 316 F.3d 228 (3d Cir. 2003) [hereinafter "*Banks III*"] (citing *Teague*, 489 U.S. at 308).[3] The Supreme Court has acknowledged that

---

[3] *Banks III* is currently pending appeal before the Supreme Court. *See Beard v. Banks*, 124 S. Ct. 45 (2003) (Mem) (granting petition for writ of certiorari).

6

discerning whether a rule is "old" or "new" for retroactivity purposes is not without difficulty, "[b]ut *Teague* established some guidance for making this determination, explaining that a federal habeas court operates within the bounds of comity and finality if it applies a rule 'dictated by precedent existing at the time the defendant's conviction became final.'" *Williams*, 529 U.S. at 381 (quoting *Teague*, 489 U.S. at 301). Conversely, a "new" rule is one which "breaks new ground or imposes a new obligation on the States or the Federal Government." *Id*. The question of whether a rule is "old" or "new" for *Teague* purposes remains one "which the 'federal courts must make an independent evaluation.'" *Id*. at 382 (quoting *Wright*, 505 U.S. at 305 (O'Connor, J., concurring in judgment)). In accord with the AEDPA, federal courts may rely only on the precedents of the Supreme Court in making this determination. *Id*. at 412.

*Teague* outlines a three-step analysis for determining whether the nonretroactivity principle prevents a habeas petitioner's reliance on a particular rule.[4] "First, we must determine when the defendant's conviction became final. Second, we must survey the legal landscape to determine whether or not the case in question announced a new rule of constitutional law. Finally, if we determine that the case did announce a new rule, we must consider whether it fits into one of the two exceptions to nonretroactivity." *Banks III*, 316 F.3d at 233 (citing *Caspari*, 510 U.S. at 390). There is no dispute in this case that the final adjudication of Lewis's conviction pre-dated *Flores-Ortega* and the two exceptions to the *Teague* bar do not apply. Thus we focus our inquiry on step two, reviewing the legal landscape to determine whether the duty to consult announced in *Flores-Ortega* was dictated by precedent clearly established at the time Lewis's conviction became final.[5] *Williams*, 529 U.S. at 412.

---

[4] We note that, while the question of whether a particular rule is *Teague*-barred is a threshold question, a "federal court may, but need not, decline to apply *Teague* if the State does not argue it." *Horn*, 536 U.S. at 271. The district court did not consider Lewis's *Flores-Ortega* challenge, and the *Teague* issue in this context did not arise. We directed the parties *sua sponte* to brief the question.

[5] Whether *Flores-Ortega* constitutes an "old" rule for retroactivity purposes is a question of first impression in this Circuit. Our research indicates that only one Federal Court of Appeals has considered this question on the merits. In *Daniel v. Cockrell*, 283 F.3d 697, 708 (5th Cir. 2002), the Fifth Circuit held, without discussion, that *Flores-Ortega* constitutes a "new" rule for *Teague* purposes.

7

## 2.

In *Flores-Ortega,*[6] the Supreme Court addressed the question of whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant. Because the question concerned whether counsel's representation was constitutionally defective, the Court held that the familiar two-part test announced in *Strickland* governed its inquiry.[7] 528 U.S. at 476-77. Applying the *Strickland* standard to the particular facts before it, the Court held that "counsel had a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for

---

[6] We begin our *Teague* analysis with *Flores-Ortega*, as "[t]he crux of the analysis when *Teague* is invoked... is identification of the rule on which the claim for habeas relief depends." *Wright*, 505 U.S. at 311 (Souter, J., concurring in judgment). *See also Banks III*, 316 F.3d at 232.

[7] Under *Strickland*, "[a] defendant claiming ineffective assistance of counsel in violation of the Sixth Amendment... must show first that counsel's representation was objectively unreasonable, and second, that counsel's deficient performance was prejudicial." *United States v. Solis*, 252 F.3d 289, 293 (3d Cir. 2001) (citing *Flores-Ortega*, 528 U.S. at 476-77).

appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning–advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. Additionally, the Supreme Court instructed that courts undertaking this inquiry, as with all ineffective assistance claims, "take into account all the information counsel knew or should have known." *Id*. at 480 (citing *Strickland*, 466 U.S. at 690). With respect to *Strickland's* prejudice prong, the Court held that the harmless error inquiry applied and that relief could not be granted unless the defendant could "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

The parties do not dispute that *Strickland*'s reasonableness test was clearly established law in 1987 when Lewis's conviction became final, and that it governs the adjudication of this case. *See Williams*, 529 U.S. at 391 ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]"). Rather, the point of contention rests with the Court's second holding in *Flores-Ortega* respecting the duty to consult. Lewis contends the second holding of *Flores-Ortega* was dictated by precedent, and urged at oral

argument that the Supreme Court merely "clarified" the law as it applied to the facts before it. Conversely, the Commonwealth argues that this holding imposed a new burden on the States by "set[ting] forth a new standard for the appellate process" and is barred by *Teague* from application in this case.

We note as an initial matter that the Commonwealth has provided little analysis and cites no authority for this position. When pressed at oral argument, counsel for the Commonwealth could only point to language in the Court's opinion announcing the decision, "[t]oday... we hold" and "the standard we announce today," 528 U.S. at 480, language which counsel took "to mean a new rule, if you announce the rule today." *See also* Appellee Br. at 22. This language is hardly dispositive or even persuasive. The point of the *Teague* analysis is to determine whether a rule which post-dates the State's final adjudication of a habeas petitioner's conviction may, without offending principles of comity and finality, be retroactively applied. The language on which the Commonwealth relies merely states the obvious (that the case announced a rule on a particular day) and does not inform the second prong of our *Teague* inquiry. Further, we note that case law need not exist on all fours to allow for a finding under *Teague* that the rule at issue was dictated by Supreme Court precedent. *Strickland* is a rule of general applicability which asks whether counsel's conduct was objectively reasonable and conformed to professional norms based "on the *facts of*

*the particular case*, viewed as of the time of counsel's conduct." 466 U.S. at 690 (emphasis added). This standard "provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Williams*, 529 U.S. at 391.

For these reasons, the Commonwealth's emphasis on the *particular* duty identified by the *Flores-Ortega* Court – counsel's constitutional obligation to consult with her client regarding appeal options – as a basis for classifying this rule as "new" for *Teague* purposes is misplaced. "That the *Strickland* test 'of necessity requires a case-by-case examination of the evidence,'... obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by this [Supreme] Court." *Id.* (quoting *Wright*, 505 U.S. at 308 (Kennedy, J., concurring in judgment)). Justice Kennedy's concurrence in *Wright v. West* is instructive on this point:

> If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule.... Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of

> factual contexts, *it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent.*

505 U.S. at 308-09 (emphasis added). Our review of the legal landscape, well-settled at the time Lewis's conviction became final, compels us to conclude that *Flores-Ortega* did not "yield[] a result so novel that it forge[d] a new rule," and that *Flores-Ortega's* application of the *Strickland* standard was dictated by precedent and merely clarified the law as it applied to the particular facts of that case.

Indeed we need look no further than *Strickland* in making this determination. In announcing the objective reasonableness standard, the *Strickland* Court identified "certain basic duties" that its precedents and then-existing professional norms established criminal defense attorneys must carry out to perform competently within the meaning of Sixth Amendment. The Court included among these duties "counsel's [obligation to] function as assistant to the defendant... [and] the overarching duty to advocate the defendant's cause and *the more particular duties to consult with the defendant on important decisions* and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688 (emphasis added). The decision whether to appeal is unquestionably one such

"important decision." *See*, *e.g.*, *Flores-Ortega*, 528 U.S. at 489 (Souter, J., concurring in part and dissenting in part); *Evitts v. Lucey*, 469 U.S. 387 (1985)*; Wainwright v. Sykes*, 433 U.S. 72, 92 (1977) (Burger, C.J., concurring) (noting the question of whether to appeal is a "critical procedural decision")*; Rodriguez v. United States*, 395 U.S. 327 (1969). It follows then that since the decision to appeal "cannot be made intelligently without appreciating the merits of possible grounds for seeking review, and the potential risks to the appealing defendant, a lay defendant needs help *before* deciding."[8] *Flores-Ortega*, 528 U.S. at 489 (Souter, J.) (emphasis added) (citations omitted).

This proposition – that a defendant requires the advice of counsel to make an informed decision respecting his right of appeal – was hardly novel in 1987. It was clearly established that the Sixth Amendment's guarantee of effective

---

[8] We note that the *Flores-Ortega* majority and the Justices dissenting in part and joining in Justice Souter's opinion disagreed only on the question of whether counsel should have a *per se* duty to consult the defendant in all cases. *See* 528 U.S. at 481. The majority rejected such a bright-line rule though recognizing it as the "better practice," *id*. at 479, whereas Justice Souter would have held that counsel is "almost always" obligated to consult her client about an appeal. *Id*. at 488.

assistance of counsel extended to the first appeal as of right, and the *Strickland* standard applied to appellate representation. *See generally Jones v. Barnes*, 463 U.S. 745 (1983); *Evitts*, 469 U.S. 387. The Supreme Court cases respecting attorney competence on appeal recognized that lay defendants "may not even be aware of errors which occurred at trial," *Rodriguez*, 395 U.S. at 330, and required "the superior ability of trained counsel in the 'examination into the record, research of the law, and marshalling of arguments'" on appeal just as at trial. *Jones*, 463 U.S. at 751 (quoting *Douglas v. California*, 372 U.S. at 358). Thus, though "the accused has the ultimate authority to make certain fundamental decisions regarding the case,... [including] whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal," *id.* at 751 (citing *Sykes*, 433 U.S. at 93, n.1 (Burger, C. J., concurring)); ABA Standards for Criminal Justice 4-5.2, 21-2.2 (2d ed. 1980)), counsel was constitutionally obligated to advise the defendant respecting those decisions to allow for intelligent exercise of the particular right. *See*, *e.g.*, *Rock v. Arkansas*, 483 U.S. 44 (1987) (right to testify on one's behalf)*; Hill v. Lockhart*, 474 U.S. 52 (1985) (guilty plea; waiver of right to jury trial). *Flores-Ortega* broke no new ground in holding the duty to consult also extended to counsel's obligation to advise the defendant of his appellate rights.

As Justice Souter's concurring opinion in *Flores-Ortega* evidences, this view comports with the prevailing professional norms existing in 1987, to the extent these norms are denoted in the published standards of the American Bar Association ("ABA"). *Flores-Ortega*, 528 U.S. at 490, *quoting* ABA Standards for Criminal Justice 21-2.2(b) (2d ed. 1980) ("Defense counsel should advise a defendant on the meaning of the court's judgment, of defendant's right to appeal, and of the probable outcome of appealing."). Promulgated in 1980, the ABA's standards pre-date *Strickland*. The Supreme Court has cited with approval the use of "[p]revailing norms of practice as reflected in the American Bar Association standards and the like... [as] guides to determining what is reasonable, but only guides." *Strickland*, 466 U.S. at 688; *Flores-Ortega*, 528 U.S. at 479. In light of the foregoing well-settled Supreme Court precedents respecting the constitutional standard for appellate representation, we believe reasonable jurists applying the *Strickland* standard to Lewis's claim would have concluded that the Court's "previous precedents... [did] not simply 'inform, or even control or govern' the analysis, but instead... compel[led] the rule" in *Flores-Ortega*. *Banks III*, 316 F.3d at 234 (quoting *Saffle v. Parks*, 489 U.S. 484, 491 (1990)) (add'l citation omitted).

Accordingly, we hold that *Flores-Ortega*'s application of the *Strickland* standard did not forge new ground or otherwise impose a new obligation upon the States in announcing the duty to consult, and this holding constitutes an

11

"old" rule which may be retroactively applied to Lewis's claim of ineffectiveness.[9]

## C.  Merits Analysis

### 1.

Having concluded that the duty to consult as announced in *Flores-Ortega* constitutes an "old" rule for retroactivity purposes and clearly established law, we now move to the merits of Lewis's claim and consider the second question certified on this appeal: whether, in light of *Strickland* and *Flores-Ortega*, the state courts' application of the rule of *Commonwealth v. Dockins* resulted in a decision that was "contrary to" or involved an "unreasonable application" of clearly established federal law. In *Williams v. Taylor*, Justice O'Connor, writing for the majority, held that the terms "contrary to"

and "unreasonable application" have independent meanings, each of which must be given effect to accord with congressional intent. 529 U.S. at 407. Justice O'Connor read "contrary" to employ its common meaning – that which is "diametrically different,' 'opposite in character or nature,' or 'mutually opposed,'" *id.* at 405 – and concluded that a state-court decision is "contrary to" clearly established federal law if: (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," *id.*, or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406.

Justice O'Connor found the "unreasonable application" clause of the AEDPA "no doubt difficult to define," *id.* at 410, but held generally that this provision is contravened if "a state-court decision correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."[10] *Id.*

---

[9] The parties do not contest that the third holding of *Flores-Ortega*, the prejudice standard, is an "old" rule and clearly established law. To show prejudice under this standard, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." 528 U.S. at 484. As the Supreme Court observed, "this prejudice standard breaks no new ground, for it mirrors the prejudice inquiry applied in *Hill v. Lockhart*, [*supra*], and *Rodriguez v. United States*, [*supra*]." *Id.* at 485.

---

[10] Justice O'Connor posited that the Fourth Circuit's additional holding that this clause includes any state-court decision which "unreasonably extends a legal principle from our precedent to a new context where it should not apply (or unreasonably refuses to extend that principle to a new context where it should apply)'... may perhaps be correct, [but observed] the classification does have

at 407-08. The unreasonableness of a state court's decision must be judged from an objective standard; "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *Mitchell v. Esparza*, 124 S. Ct. 7, 11 (2003) ("unreasonable application" is an "objectively unreasonable" application of clearly established law as opposed to "incorrect"). Finally, we must accept the factual findings of the state court as presumptively correct, a presumption the petitioner may only rebut with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**2.**

The Pennsylvania courts decided Lewis's post-conviction petitions on independent state law grounds concluding that his ineffectiveness claim was governed by *Commonwealth v. Dockins*.[11]

_____

some problems of precision." *Williams,* 529 U.S. at 409. Our decision today does not require that we explore this question.

[11] We note that the mere fact that the Commonwealth courts failed to mention *Strickland* is not dispositive of the question of whether the courts' decisions adjudicating Lewis's claim were contrary to clearly established federal law. As the Supreme Court has held, "[a] state court's

*Dockins* stands for the proposition that "[t]rial counsel can not be held ineffective for failing to file an appeal when his client has not asked him to do so." Appendix, Vol. II at 385 (Superior Court PCHA opinion citing *Dockins*) (add'l citation omitted). The dispositive question under *Dockins* is whether the defendant directed his trial counsel to perfect an appeal; the inquiry begins and ends here. Pursuant to *Dockins*, Lewis's petitions for post-conviction relief were denied based on the PCHA court's conclusion, affirmed by the Superior Court, that "the Defendant does have an absolute right to direct appeal, but *they* [defendants] must make efforts to contact an attorney in that respect and I would submit based on Mr. Elash's [trial counsel] testimony and based upon the lack of any other substantive evidence that he was not contacted within the 30 day appeal period and, therefore, that there is a waiver of the right to direct appeal." Appendix, Vol. 1 at 172-73 (emphasis added). *Dockins*, then, is a *per se* rule of strict application which holds as a matter of law that counsel acts reasonably in all cases where a notice of appeal is not filed, and the defendant is silent. The Supreme

_____

decision is not 'contrary to... clearly established Federal law' simply because the court did not cite our opinions.... [A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Esparza*, 124 S. Ct. at 10 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Court invalidated a similar rule in *Flores-Ortega*. The challenged rule in that case obligated counsel to file an appeal in all cases where the defendant had not expressly instructed that an appeal *not* be taken. 528 U.S. at 478. The Court quickly concluded that the rule, known as the "*Stearns* rule,"[12] was contrary to *Strickland*, holding:

> Such a rule effectively imposes an obligation on counsel in all cases either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly. We reject this *per se* rule as inconsistent with *Strickland*'s holding that "the performance inquiry must be reasonable considering all circumstances...." [T]hat alone mandates vacatur and remand.

*Id*. (quoting *Strickland*, 466 U.S. at 688)). The *Dockins* rule operates in much the same manner: whereas the *Stearns* rule automatically deemed counsel ineffective for failing to take an appeal where the defendant was silent, *Dockins* holds that counsel always acts reasonably and may not be found ineffective in such circumstances. Whether a rule inures to the benefit or disadvantage of the defendant, *Strickland* does not permit the imposition of such bright-line rules. As the *Williams* Court stressed, "we have consistently declined to impose mechanical rules on counsel – even when those rules might lead to better representation.... '[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation... [but rather] simply to ensure that criminal defendants receive a fair trial.'" 528 U.S. at 481 (quoting *Strickland*, 466 U.S. at 689). Thus, the Pennsylvania courts' application of *Dockins* to Lewis's ineffectiveness claims was "contrary to" clearly established law.

The Commonwealth does not seriously contest this conclusion. Rather the Commonwealth contends on brief that "the state courts found that counsel did 'consult' with appellant... [regarding] his appellate rights." Appellee Br. at 26. However, the Commonwealth backed away from this assertion at oral argument, conceding that none of the state courts which reviewed Lewis's claims during the two rounds of post-conviction review made a finding as to whether Lewis's court-appointed attorney consulted him regarding his appellate rights following the entry of the guilty plea, his sentencing or the trial judge's denial of his post-trial

---

[12] *See United States v. Stearns*, 68 F.3d 328 (9th Cir. 1995).

motion.[13] Where the state court has not made a material finding, the usual course is to remand to the district court to hold an evidentiary hearing on the question. *See Solis*, 252 F.3d at 294-95 (remanding under 28 U.S.C. § 2255 for evidentiary hearing). However, in this case such a hearing would likely be unproductive as the relevant events occurred over 16 years ago. *See Riley v. Taylor*, 277 F.3d 261, 294 (3d Cir. 2001) (en banc). Further, we believe the issue of trial counsel's representation, following the sentencing proceeding and the trial judge's ruling denying the motion for leave to withdraw the guilty plea, was sufficiently litigated during the two evidentiary hearings held on Lewis's post-conviction applications in state court to permit our adjudication of this question.

---

[13] The Superior Court's PCHA opinion mentions that "[t]rial counsel admitted discussing possible grounds for appeal and mentions that none of the grounds were of appellate merit." Appendix, Vol. II at 385. Trial counsel testified at the PCHA hearing that "I know he [Lewis] was upset [after he was sentenced], but I do have a recollection of telling him that he probably didn't have any appellate rights that were viable." *Id.* at 163. Counsel for the Commonwealth conceded at oral argument that this testimony is ambiguous at best and could not support a finding that trial counsel consulted with Lewis within the meaning of *Flores-Ortega*, and the Pennsylvania courts did not make such a finding.

*Flores-Ortega* obligates counsel to advise "the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. Lewis pleaded guilty and does not seek to appeal from a jury trial. The Supreme Court has held this is a "highly relevant factor" in deciding whether counsel was duty-bound to advise a defendant about his appellate rights, though the fact of a guilty plea is not dispositive. *Id.* In guilty-plea cases, our *Strickland* analysis must "consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* This case is unique in that whether or not a plea agreement existed, Lewis is entitled to federal habeas relief stemming from trial counsel's failure to advise him of his right to appeal from the trial court's denial of his motion to withdraw the guilty plea.

Based on our review of the transcripts of the evidentiary hearings held in state court, it is clear that Elash did not meet with Lewis or otherwise attempt to contact him after the sentencing proceeding or the post-trial motion was denied, although Lewis indicated an interest in challenging his conviction. At best, Elash could only recall speaking briefly with Lewis in court following sentencing, stating, "I know he was upset,

15

but I do have a recollection of telling him that he probably didn't have any appellate rights that were viable." Appendix, Vol. 1 at 163. Regarding Lewis's attempts to contact him after the sentencing and the post-trial motion was denied, Elash testified, "I don't have those records. You know, if he did, I wouldn't – he may have... he might have had trouble getting in touch with me." *Id*. It is not clear from the hearing transcripts whether Elash was aware that Lewis had filed a motion *pro se* to withdraw the guilty plea, but the motion was entered on the trial docket and Elash should have been aware of it. *See id*. at 105. In any case, Elash testified that he filed the motion to withdraw only after Lewis instructed him to do so, apparently by correspondence. *Id*. at 162. At a minimum, this should have put Elash on notice that Lewis may have been interested in appealing the trial judge's ruling and his conviction. *See Flores-Ortega*, 528 U.S. at 480 (citation omitted) (instructing "courts must take into account all the information counsel knew or should have known").

Trial counsel's testimony, coupled with the bare-boned post-trial motion[14] to withdraw the guilty plea that he filed 28 days late, evidences an inattention to his client's interests, a neglect which caused Lewis to forfeit his right of appeal. While trial counsel's testimony alone supports this finding, our decision is further buttressed by the contemporaneous evidence of Lewis's attempt to timely assert his appellate rights. The trial judge denied the post-trial motion filed by Elash on April 16, 1987, and Lewis's time to appeal expired 30 days later on May 16, 1987. On May 3, 1987, Lewis wrote to the Clerk of the Court stating, "[s]ince my sentence of 30 to 60 years on March 3, 1987, I have received no correspondence from John Elash[,] Esq. my attorney at hand, and I have no idea, what is happening, or what will happen. So im [*sic*] asking for an <u>extension of time</u>, to prepare my case in the proper order, and

motion, Lewis alleged his plea was invalid "due to inducement of promise from Defendant[']s attorney to combine all charges as one (1) for one (1) lesser sentence," and ineffective assistance resulting from trial counsel "not raising or arguing" to enforce the plea agreement and advising him to plead guilty. *Id*. at 84. Even if trial counsel believed any post-trial motion or appeal would be frivolous, his proper course would have been to follow the procedures set forth in *Anders v. California*, 386 U.S. 738 (1967), or *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981), and seek permission to withdraw from the case after giving notice to Lewis of his intention.

---

[14] The motion Elash filed on Lewis's behalf was three sentences in length and, as the basis for the motion, stated only that "Defendant avers that his plea was not knowingly or intelligently entered." Appendix, Vol. 1 at 87. No factual predicate was established nor legal authority cited. Conversely, in his *pro se*

without any knowledge of the legal system." Appendix, Vol. 1 at 92. In June of 1987, Lewis also wrote letters to the Pennsylvania State Bar Association and the Disciplinary Counsel reporting Elash for alleged misconduct in the handling of his case and complaining that he had not heard from Elash since the sentencing, despite attempts to contact him. *Id*. at 94-95. Finally, on July 13, 1987, Lewis wrote to the Clerk of the Court requesting information about "the present state, of any appeal you may have submitted to the Court in my behalf, and who is the lawyer of record." *Id*. at 96.

We believe this record compels a finding that trial counsel's conduct was objectively unreasonable. We can think of no strategic reason to explain why Elash failed to follow-up with Lewis either following the sentencing or after the trial court denied the motion to withdraw, and the Commonwealth offers none. The ultimate decision to appeal rests with the defendant. *Jones*, 463 U.S. 745. Thus, even if Elash concluded that any appeal would be frivolous, he could not disregard the evidence of Lewis's unequivocal desire to challenge his sentence and guilty plea, and abandon his client at this critical stage in the proceedings. *See Evitts*, 469 U.S. at 394 (counsel's procedural error depriving the defendant of his appeal rights "difficult to distinguish... from that of some who had no counsel at all"), *citing Anders*, 386 U.S. 738 (add'l citation omitted).

Finally, we hold that Lewis has demonstrated that there is a reasonable probability that, but for counsel's deficient performance, he would have appealed. *Flores-Ortega*, 528 U.S. at 484. The contemporaneous evidence of Lewis's desire to challenge his conviction satisfies this requirement. In addition, Lewis has also identified nonfrivolous points to raise on an appeal, among them ineffective assistance of counsel resulting from (1) trial counsel's failure to object and move to enforce the alleged plea agreement when he was sentenced to consecutive terms of 5 to 10 years of imprisonment on the six robbery counts rather than to concurrent terms, and (2) trial counsel's failure to timely move to withdraw the guilty plea when he did not get the benefit of the alleged plea agreement.[15] *See id*. at 486 ("showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed"). Lewis may raise these and all other claims on his direct appeal.

## III. CONCLUSION

The district court's order denying the petition for a writ of habeas corpus is reversed. This matter is remanded to the

---

[15] We note that although Lewis was facing 10 to 20 years on each robbery count, a decision to withdraw the guilty plea under the facts of this case would not have been objectively irrational. Lewis was 36 years old and did not have a prior record when he was convicted and sentenced to 30 to 60 years of incarceration.

district court with instructions that it issue a writ of habeas corpus conditioned upon the Commonwealth's reinstatement of Lewis's right of first appeal within 45 days from entry of the district court's order granting the petition.