Richard McINTYRE, Petitioner,

v.

Edward KLEM et al., Respondents.

No. 03–CV–3040.

United States District Court,
E.D. Pennsylvania.

Nov. 30, 2004.

Jonathan H. Feinberg, Kairys, Rudovsky, Epstein & Messing, LLP, Philadelphia, PA, for Petitioner.

Paul D. Henriksen, Thomas W. Dolgenos, Philadelphia District Attorney's Office, Philadelphia, PA, for Respondents.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Petitioner Richard McIntyre ("McIntyre") brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. I referred the petition to the magistrate judge for a Report and Recommendation ("R & R") in accordance with 28 U.S.C. § 636(b)(1)(B). The R & R, recommended that I deny the petition. McIntyre filed timely objections and respondent filed a response to those objections. McIntyre then sought and was granted permission to file a praecipe. In his praecipe, McIntyre argued that the R & R failed to apply the holding from a Third Circuit case decided just over a month and a half before the R & R was filed. The respondents filed a response to petitioner's praecipe arguing

that the Third Circuit case does not change the result. Thereafter I appointed Jonathan H. Feinberg, Esq. from the CJA panel to represent McIntyre. McIntyre then filed a counseled memorandum in support of McIntyre's petition for writ of habeas corpus, explaining petitioner's reliance on the Third Circuit case. For the reasons set forth below, I will conditionally grant the petition for writ of habeas corpus.

## I. *Background*

In a jury trial in the Court of Common Pleas in Philadelphia County, McIntyre was convicted of third-degree murder and possession of an instrument of crime. On July 20, 1998 he was sentenced to 22 ½ to 45 years in prison. At trial he was represented by privately retained counsel, Edward Wiley, Esq. ("Wiley"). After McIntyre was convicted and sentenced, Wiley met with McIntyre's parents. McIntyre's parents told Wiley that they planned to retain a new lawyer for McIntyre. Wiley gave McIntyre's parents his entire file and withdrew from representing McIntyre. McIntyre never filed a notice of appeal by himself or through counsel. On June 16, 1999, McIntyre filed a pro se PCRA petition alleging, among other things, that his trial counsel was ineffective for failing to file a direct appeal on his behalf. On April 14, 2000 the trial court held an evidentiary hearing to determine whether trial counsel was ineffective.

At the PCRA evidentiary hearing, McIntyre was represented by new counsel. At the hearing, Wiley testified as to having conversations with McIntyre's parents:

> THE WITNESS: What happened was I had conversations with his family.

THE COURT: His parents?

THE WITNESS: Yes. This conversation took place within a few days or a day or two initially after the verdict. That was the first conversation. It did not deal with appeal; it dealt with some other issues. A few weeks later—I'm not sure how long that was—the issue of appeal came up. It may have been two weeks. And what I said was simply he's entitled to an appeal but there was not basis that I saw, no viable basis, for an appeal. Furthermore, I in good conscience could not accept a fee for you to pursue an appeal which to me simply didn't make any sense.

They then said to me that they would obtain another lawyer and they asked me to bring them or to send them the file. What I did was personally deliver the file myself to the family at their home within two or three days of the request. It may have been four but I think it was a few days after the request. Again, I'm saying after the request, not after the trial, after the request. And that's what happened.

(N.T. 4/14/00 at 30–31.) On cross examination, Wiley's answers made it clear that these conversations occurred after sentencing because counsel asked, "so that would have given them a week to get the 1925 statement[1] in?" and Wiley replied, "Yes." (N.T. 4/14/00 at 33.) He was then asked if he informed the parents that they had a week to file the 1925 statement and he said that it never came up. (*Id.*) After Wiley again summarized his contacts with the parents, he was further asked, "It is your recollection [the conversation] was within the thirty days that the appeal had to be filed correct? Otherwise it would

---

1. A "1925 statement" refers to the provision in Pa. R.App. P.1925(b) allowing for a trial court to order an appealing party to file "a concise statement of the matters complained of on appeal." It is clear from the context of the questioning here that counsel was referring to the filing of a notice of appeal.

have all been moot. Isn't that correct?" and he replied "yes." (N.T. 4/14/00 at 37–38.)

Wiley testified that he did not talk to McIntyre about filing a direct appeal: "I've never had any communications directly on the issue of appeal with Mr. McIntyre, never.... He never asked." (N.T. 4/14/00 at 40.) Wiley also said that McIntyre refused to talk to him, and when questioned on this point, he did not indicate that he had tried speaking with McIntyre directly:

> We spoke the day after the sentencing very briefly because he was upset. Thereafter he was calling his parents virtually every day.... I asked them to have him call me and they told me he did not want to talk to me.

(N.T. 4/14/00 at 41.) McIntyre testified that he Wiley did not contact McIntyre and that McIntyre contacted Wiley by mail and tried to phone him. (N.T. 4/14/00 at 5.)

At the end of the evidentiary hearing, the trial court made the following findings:

> This is an interesting situation. In view of the testimony of the parents, I think they were confused and somewhat negligent in their pursuit of helping their son file his appellate rights. So I think in the interests of justice I'm going to reinstate his appellate rights.

(Notes of Testimony, April 14, 2000, at 41.) The Commonwealth argued that relief could be granted only if the court found trial counsel's testimony was not credible and that a request for an appeal had been made and counsel disregarded that request. The court replied:

> No, I'm now going to create new law. I'm going to say I knew this defendant, he was very difficult, he was very upset throughout this trial. That he did not cooperate with his lawyer. That he decided to deal with his parents. That Mr.

Wiley turned over the whole file to his parents. They didn't follow through. So should [defendant] be penalized?

. . . . .

> What I'm saying here is that for reasons known only to [defendant] he refused to communicate with Mr. Wiley. He dealt with his parents. Mr. Wiley turned the file over to the parents. I don't know what else a lawyer can do. And then the parents just went to the NAACP and the Defender's Office and did everything to try to help him but they were ineffective.

(Notes of Testimony, April 14, 2000, at 42–43.) The court also found that McIntyre did ask his parents for an appeal. (N.T. 4/14/00 at 43.)

The trial court granted McIntyre post-conviction relief in the form of a *nunc pro tunc* appeal at this April 14, 2000 hearing. On May 2, 2002, in an unpublished decision the Superior Court reversed. The Superior Court overturned the trial court ruling because "a claim of ineffectiveness of the parents of a criminal defendant is not cognizable under the PCRA, and because the trial court expressly found that trial counsel had not been ineffective in failing to file an appeal." (Super. Ct. Op. at 2.) The Superior Court cites as the applicable law the state court decisions requiring defendant to prove that he requested counsel to file an appeal and that counsel disregarded the request. (Super. Ct. Op. at 7 *citing Commonwealth v. Lehr*, 400 Pa.Super. 514, 583 A.2d 1234, 1235 (1990) (holding "[t]o successfully avoid a finding of waiver, the [post-conviction petitioner] 'must prove that he requested an appeal and that counsel disregarded the request.'"); *Commonwealth v. Knighten*, 742 A.2d 679, 682 (Pa.Super.1999) (holding that when a petitioner fails to meet his burden of proving that he asked counsel to file an appeal and

that counsel disregarded that request, the post-conviction request for reinstatement of appellate rights must be denied.))[2] The Superior Court said, "Here, the PCRA court determined that counsel was not ineffective because he was not instructed to file an appeal on Appellee's behalf. Accordingly, as Appellee's claim of ineffectiveness necessarily fails, he should not have been entitled to restoration of his appellate rights nunc pro tunc." (*Id.* at 7.)

On May 12, 2003, McIntyre filed the instant habeas petition raising one claim— that his trial counsel was ineffective for failing to preserve his appellate rights. The R & R determined that this claim was exhausted, and I adopt the R & R's findings as to the exhaustion of petitioner's appellate rights. The R & R also determined that petitioner's claim was meritless, but the R & R did not consider the implication of the recent Third Circuit decision *Lewis v. Johnson,* 359 F.3d 646 (3d Cir.2004). For the reasons set forth below, I will grant the petition for habeas corpus.

## II. *Standard of Review*

Where a petition for a writ of habeas corpus has been referred to a magistrate judge for a Report and Recommendation, the district court "shall make a *de novo* determination of those portions of the report ... to which objection is made ... [The court] may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate." 28 U.S.C. § 636(b).

28 U.S.C. § 2254 authorizes federal courts to grant habeas relief to a prisoner "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Habeas corpus relief shall be granted if the state court judgment: (1) was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States; (2) "involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States;" or (3) was the result of "an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d).

A state court judgment is "contrary to clearly established Federal law" if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law, or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A state court judgment "involve[s] an unreasonable application of clearly established Federal law" if "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495; *Werts v. Vaughn,* 228 F.3d 178, 197 (3d Cir.2000). In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, habeas courts may consider the decisions of inferior federal courts. *Fischetti v. Johnson,* 384 F.3d 140, 149 (3d Cir.2004) (stating,

---

**2.** These cases stand for the same proposition as *Commonwealth v. Dockins,* 324 Pa.Super. 305, 471 A.2d 851, 854 (1984), which holds that "[t]rial counsel can not be held ineffective for failing to file an appeal when his client has not asked him to do so."

"The Supreme Court itself appears to adopt this approach, since it has pointed to decisions of federal and state appeals courts as evidence that an interpretation of Supreme Court precedent was not objectively unreasonable" *citing Price v. Vincent,* 538 U.S. 634, 643 n. 2, 123 S.Ct. 1848, 155 L.Ed.2d 877).

State court factual determinations are entitled to a presumption of correctness. Randy Hertz and James S. Liebman note that the two subsections governing deference to state court determinations of factual issues appear to be in conflict but must be read *in pari materia.* 1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 20.2c (4th ed. Matthew Bender & Co., Inc.2001); *see also Lewis v. Johnson,* 359 F.3d 646, 652, 658 (3d Cir.2004) (citing language from both § 2254(d)(2) and (e)(1)). Section 2254(d)(2) provides habeas corpus relief when the state court proceedings:

> resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence provided in the State court proceeding.

Section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

According to Hertz and Liebman, section 2254(e)(1) applies only if the determinations in state court were reasonable and survive section 2254(d)(2). Hertz & Liebman, *supra,* at § 20.2c. Therefore, "state court factfindings that are flawed because they are 'unreasonable,' [ ] are a basis for habeas corpus relief" under section 2254(d)(2) and "findings that are not flawed because they are '[ ]reasonable,' [ ] are presumed to be correct unless the petitioner proves otherwise 'by clear and convincing evidence'" under section 2254(e)(1). *Id.*

### III. *Discussion*

McIntyre raises one claim in his petition for habeas corpus: ineffective assistance of counsel for failure to preserve petitioner's appellate rights. Under the Sixth Amendment, criminal defendants have a right to "reasonably effective" legal assistance. *Roe v. Flores–Ortega,* 528 U.S. 470, 476, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Ineffective assistance of counsel claims must be evaluated taking into account the facts in the particular case as of the time of counsel's conduct and judicial scrutiny should be highly deferential. *Id.* at 477, 120 S.Ct. 1029. Claims of ineffective assistance are analyzed under the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to merit habeas relief based on ineffectiveness of counsel, petitioner must establish that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores–Ortega,* 528 U.S. at 477, 120 S.Ct. 1029.

### 1. *Strickland* Step One: Counsel's Performance

 Filing a notice of appeal is "a purely ministerial task that imposes no great burden on counsel." *Roe v. Flores–Ortega,* 528 U.S. at 474, 120 S.Ct. 1029. The law is clear that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreason-

able." *Id.* at 477, 120 S.Ct. 1029. If a defendant specifically instructs counsel not to file an appeal, counsel is not deficient by not filing. *Id.* at 477, 120 S.Ct. 1029. When counsel has not received specific instructions, counsel can still be found constitutionally ineffective if counsel had a duty to consult with the defendant about an appeal and failed to do so. *Id.* at 478, 120 S.Ct. 1029.

Pennsylvania state courts have held that trial counsel is only ineffective for failure to file an appeal if the client asked counsel to file the appeal. *See e.g. Commonwealth v. Dockins,* 324 Pa.Super. 305, 471 A.2d 851, 854 (1984). The Third Circuit found that the application of that *per se* rule was contrary to the Supreme Court's holding in *Strickland* and was " 'contrary to' clearly established law." *Lewis v. Johnson,* 359 F.3d 646, 659 (3d Cir.2004). Therefore, the ineffective assistance of counsel analysis does not end with a determination that counsel did not receive specific instructions, but proceeds to ask "whether counsel in fact consulted with the defendant about an appeal." *Roe v. Flores–Ortega,* 528 U.S. at 478, 120 S.Ct. 1029.

■ "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478, 120 S.Ct. 1029. If counsel consults with defendant, he or she is only performing in a professionally unreasonable manner if he or she fails to follow defendant's express instructions. *Id.* at 478, 120 S.Ct. 1029. Where counsel has not consulted with client, the relevant question is whether counsel had an obligation to consult with the defendant about an appeal. *Id.* at 478, 120 S.Ct. 1029.

Counsel is constitutionally required "to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* at 480, 120 S.Ct. 1029. One factor that is highly relevant to this determination is whether the defendant plead guilty or had a trial. *Id.* It is much more likely that a rational defendant would want to appeal a trial than a guilty plea. *Id.* The Court predicted "that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481, 120 S.Ct. 1029.

■ The standard for determining whether counsel had a constitutional duty to consult with the defendant about an appeal should be applied to claims that arose after *Strickland's* reasonableness test became clearly established law. *Lewis,* 359 F.3d at 654, 657. The Court's application of *Strickland* in *Roe v. Flores–Ortega* "did not forge new ground or otherwise impose a new obligation upon the States in announcing the duty to consult, and this holding constitutes an 'old' rule which may be retroactively applied . . . ." *Id.* at 657.

■ In the present case, the state court found as a factual matter that McIntyre did not give Attorney Wiley specific instructions as to whether to file a notice of appeal. This determination is reasonable in light of the evidence presented in the state court proceeding and, therefore, "shall be presumed to be correct," because it has not been rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(d)(2) & (e)(1).

■ The state appellate court determined as a matter of law that Wiley was "not ineffective because he was not instructed to file an appeal on [McIntyre's] behalf." (Super. Ct. Op. At 7.) This determination was found to be " 'contrary to' clearly established law" by the Third Circuit. *Lewis v. Johnson,* 359 F.3d 646, 659 (3d Cir.2004). Therefore, the state court's determination does not preclude habeas corpus relief and McIntyre's claim must be reviewed under the standard set forth by the Supreme Court in *Roe v. Flores–Ortega.*

■ Because Wiley did not receive specific instructions from McIntyre, the next question becomes "whether counsel in fact consulted with the defendant about an appeal." *Roe v. Flores–Ortega,* 528 U.S. at 478, 120 S.Ct. 1029. The factual record is clear that Wiley did not "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes," and, therefore, did not "consult" with McIntyre as defined by the Supreme Court. *Id.* Wiley was constitutionally required "to consult with the defendant about an appeal [if] there is reason to think either (1) that a rational defendant would [have] want[ed] to appeal (for example, because there [were] nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480, 120 S.Ct. 1029.

In the present case, Wiley had a constitutional duty to consult with McIntyre because he knew that McIntyre wanted to pursue an appeal. In determining whether McIntyre "reasonably demonstrated to counsel that he was interested in appealing," courts must consider "all the information counsel knew or should have known." *Id.* The state trial court stated at the evidentiary hearing that McIntyre

asked his parents for an appeal, so there is no question that his parents knew of his wishes. Wiley's testimony at the state court evidentiary hearing explained that he told McIntyre's parents that he "could not accept a fee ... to pursue an appeal which to me simply didn't make any sense," and he went on to say, "[t]hey then said to me that they would obtain another lawyer and they asked me to bring them or to send them the file." Therefore, although the state trial court did not specifically address whether Wiley knew that McIntyre wanted to appeal, Wiley's own account of the events suggests that he knew or should have realized that McIntyre's parents were trying to appeal because McIntyre wanted an appeal.

There are also additional indicia of the unreasonableness of Wiley's behavior. Wiley answered affirmatively to the question "so that would have given them a week to get the 1925 statement in?" Therefore, he knew that the 30–day period to file an appeal might expire before McIntyre's parents could hire new counsel. He also had in mind that McIntyre, through his parents, expected to appeal. Filing a notice of appeal is "a purely ministerial task that imposes no great burden on counsel," *Roe v. Flores–Ortega,* 528 U.S. at 474, 120 S.Ct. 1029, and Pennsylvania procedure allows trial counsel to file a notice of appeal and then move to withdraw from representing McIntyre. *See e.g. Commonwealth v. Champney,* 783 A.2d 837, 840 (Pa.Super.2001). Furthermore, McIntyre's sentence was severe, which gave McIntyre every incentive to pursue an appeal, and McIntyre's conviction followed a trial, which makes it much more likely that a rational defendant would want to appeal than if conviction followed a guilty plea. *Id.* In applying the *Roe v. Flores–Ortega* test to determine whether counsel was constitutionally obligated to consult with

the defendant, the Court expected that "in the vast majority of cases, [courts would find] that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481, 120 S.Ct. 1029. In this case, Wiley was constitutionally obligated to consult with McIntyre about an appeal and his failure to do so rendered him constitutionally ineffective.

■ Respondents argue that Wiley cannot be held constitutionally ineffective because McIntyre refused to speak with Wiley. The state trial court stated, "for reasons known only to Mr. McIntyre he refused to communicate with Mr. Wiley. He dealt with his parents. Mr. Wiley turned the file over to the parents. I don't know what else a lawyer can do." Even if Wiley had tried to contact McIntyre directly and McIntyre refused to speak to him, that would not bar a finding of ineffective assistance of counsel. *See Roe v. Flores–Ortega,* 528 U.S. at 474, 120 S.Ct. 1029 (the Court remanded the case to see if counsel had a constitutional duty to consult with defendant even though the facts in that case indicated that respondent was "apparently in lockup, undergoing evaluation, and unable to communicate with counsel"). Furthermore, this finding is an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and does not bar habeas relief. Wiley initially says that McIntyre refused to talk to him, but when asked where defendant refused to talk Wiley indicated that he relied on McIntyre's parents' statement that McIntyre did not want to speak with him:

> We spoke the day after the sentencing very briefly because he was upset. Thereafter he was calling his parent virtually every day.... I asked them to have him call me and they told me he did not want to talk to me.

There is no testimony at the evidentiary hearing that Wiley tried to contact McIntyre directly. Wiley relied on his conversations with McIntyre's parents rather than calling or writing McIntyre himself. Wiley's performance was constitutionally deficient, and, therefore, the next step of the *Strickland* analysis is whether the deficient performance prejudiced the defendant.

### 2. *Strickland* Step Two: Prejudice to Defendant

For purposes of the *Strickland* analysis, to show prejudice resulting from the ineffective assistance of counsel petitioner must demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores–Ortega,* 528 U.S. at 484, 120 S.Ct. 1029. The Court stated, "We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place." *Id.* at 485–86, 120 S.Ct. 1029. In *Lewis* the Third Circuit determined that prejudice had been demonstrated by the contemporaneous evidence of defendant's desire to challenge his conviction. *Lewis,* 359 F.3d at 661.

■ In the present case, the state trial court acknowledged that McIntyre told his parents that he wanted to appeal, and acknowledged that McIntyre's parents "did everything to try to help him [file an appeal] but they were ineffective." This is sufficient evidence to conclude that, but for Wiley's failure to consult with him about an appeal, McIntyre would have timely appealed.

### IV. *Conclusion*

McIntyre has satisfied both prongs of the *Strickland* analysis and has thereby

demonstrated that his trial counsel was ineffective for failing to consult with him about filing a direct appeal. The State should entertain petitioner's direct appeal *nunc pro tunc.*

An appropriate Order follows:

### ORDER

. AND NOW, this 30th day of November, 2004, it is **ORDERED** that petitioner shall tender for filing a notice of direct appeal in the Court of Common Pleas, Philadelphia County, on or before December 30, 2004.

If petitioner tenders such notice of direct appeal on or before December 30, 2004, the Writ of Habeas Corpus shall issue unless the Court of Common Pleas permits petitioner to file the appeal *nunc pro tunc* and effectuates the appeal in accordance with this opinion on or before March 30, 2005.