

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2006

# Harrington v. Gillis

Precedential or Non-Precedential: Precedential

Docket No. 02-2419

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Harrington v. Gillis" (2006). *2006 Decisions.* Paper 665.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/665

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-2419
_____

SAMUEL HARRINGTON
Appellant

v.

FRANK D. GILLIS; THE DISTRICT ATTORNEY OF THE
COUNTY OF CHESTER, ANTHONY A. SARCIONE; THE
ATTORNEY GENERAL OF THE STATE OF PA, MICHAEL
FISHER

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-03617)
District Judge: Honorable Franklin S. Van Antwerpen
_____

Argued April 24, 2006

Before: FUENTES, STAPLETON, and ALARCÓN,* *Circuit
Judges*.

(Opinion filed: July 11, 2006)
_____

_____

*The Honorable Arthur L. Alarcón, Senior Judge, United
States Court of Appeals for the Ninth Circuit, sitting by
designation.

Mary Gibbons, Esquire. (Argued)
600 Mule Road: #16
Holiday Plaza III
Toms River, NJ 08757


         Counsel for Appellant

Nicholas J. Casenta, Jr., Esquire (Argued)
Joseph W. Carroll, Esquire
Office of District Attorney
17 North Church Street
Suite 218
Courthouse Annex-2nd Floor
West Chester, PA 19380

         Counsel for Appellees


_____

OPINION OF THE COURT
_____

ALARCÓN, *Circuit Judge*.

     Mr. Samuel Harrington appeals from the District Court's order denying his state-prisoner petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Harrington contends that he was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to file a notice of appeal. We vacate the decision of the District Court and remand.

**I**

     On April 27, 1996, Mr. Harrington collided with two vehicles while driving under the influence of alcohol. One driver died as a result of the collision, and the other sustained a broken ankle. Mr. Harrington retained attorney Robert J.

Donatoni to represent him.[1]  The retainer agreement, dated May 10, 1996, states in relevant part: "I [Mr. Donatoni] am required by the rules that govern the conduct of lawyers in the Commonwealth of Pennsylvania to place our fee agreement in writing.  As we agreed, my total fee to represent you in connection with this matter will be Twenty Five Thousand dollars."  The agreement also describes the approaching arraignment and states: "I, in turn, will enter my appearance on your behalf in the Court of Common Pleas of Chester County.  The entry of appearance is a certification to the Court that I will represent you throughout the conclusion of these proceedings."

Mr. Harrington pled guilty to Aggravated Assault by Vehicle While Driving Under the Influence ("DUI"), Homicide by Vehicle While DUI, and DUI.  The trial court accepted Mr. Harrington's guilty plea on April 7, 1997.  At a sentencing hearing on June 3, 1997, the prosecution presented victim impact statements from the living victim and the deceased victim's father, friends, and pastor.  The prosecution detailed Mr. Harrington's criminal record, including four prior convictions for DUI.  An extensive pre-sentencing investigation report noted Mr. Harrington's lack of remorse and "apparent inability to maintain sobriety."  At the sentencing hearing, Mr. Harrington accepted responsibility for his crimes, expressed remorse, and described his successful participation in rehabilitation programs since the incident.  The court "found this to be a case in the aggravated range, " and sentenced Mr. Harrington to a total of ten to twenty years on all charges.

---

[1]Mr. Harrington's Motion For Judicial Notice of State Court Exhibit; Proposed Appendix III, is granted.  *See* Fed. R. Evid. 201(b) (granting a court discretion to take judicial notice of a fact "not subject to reasonable dispute").  The Proposed Appendix consists of the retainer agreement between Mr. Donatoni and Mr. Harrington.  The motion is uncontested,  *see* 3d Cir. R. 27.3,  and the retainer agreement was admitted without objection during the evidentiary hearing on Mr. Harrington's Pennsylvania Post-Conviction Relief Act ("PCRA") petition.

Mr. Donatoni filed a Motion for Reconsideration of Sentence. He argued that the sentence was "grossly in excess of the Sentencing Guidelines." Among other contentions, he argued that the trial court failed to factor in his acceptance of responsibility and treated the injuries suffered by the individual with the broken ankle the same as the individual who died. The Motion for Reconsideration of Sentence was denied on July 22, 1997. Mr. Donatoni forwarded a copy of the denial to Mr. Harrington with a letter dated September 19, 1997, which read: "Obviously none of us are [sic] happy with this and we will have to talk about what options are available."

Under Pennsylvania law, a challenge to the discretionary aspects of a defendant's sentence is not an appeal of right. 42 Pa.C.S.A. § 9781(b); Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987). Rather, a defendant must file an allowance of appeal with the Superior Court of Pennsylvania. The Superior Court of Pennsylvania must then determine whether there is a substantial question that the sentence imposed is not appropriate under the Pennsylvania Sentencing Code. 42 Pa.C.S.A. § 9781(b). Subsection (f) of § 9781 provides: "No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals." Furthermore, Pa.R.A.P. 2119(f) requires that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."

Mr. Donatoni never discussed any available options with Mr. Harrington. He never informed Mr. Harrington that if he wished to appeal, he was first required to seek an allowance of appeal. No application for an allowance of appeal was filed.

Mr. Harrington filed a petition pro se for an appeal *nunc pro tunc* under the PCRA in the Pennsylvania Court of Common Pleas, asserting ineffective assistance of counsel based on Mr. Donatoni's failure to file a notice of appeal. An evidentiary hearing was held on May 11, 1999. Mr. Harrington testified at

the hearing that he had no contact with Mr. Donatoni after the Motion for Reconsideration was denied. He also testified that he made several attempts to contact Mr. Donatoni by making collect phone calls, but that Mr. Donatoni's office would not accept charges. He testified to using Elizabeth Bireley, his girlfriend and former wife, as an intermediary in his attempts to contact Mr. Donatoni. Mr. Harrington further testified that he believed Mr. Donatoni "was going to do every procedure that was possible," and that he had promised to file an appeal if the Motion for Reconsideration was denied. He stated he wanted to file an appeal and had been aware of the thirty-day time limit for filing a notice of appeal, but never expressly requested that Mr. Donatoni file a notice of appeal. There is no evidence he was aware that he had to seek an allowance of appeal from the Superior Court of Pennsylvania.

Ms. Bireley testified that she had made several unsuccessful attempts to contact Mr. Donatoni by phone. On August 9, 1997, she sent Mr. Donatoni a fax stating that Mr. Harrington needed to speak with him. The fax included specific questions regarding Mr. Harrington's finances and property. She testified that she left several phone messages informing Mr. Donatoni that Mr. Harrington "needs to talk to you" and requested that Mr. Donatoni contact her. In her communications with Mr. Donatoni's office, Ms. Bireley never stated that Mr. Harrington wanted Mr. Donatoni to file a notice of appeal. Ms. Bireley testified that Mr. Harrington continually expressed to her his interest in filing a notice of appeal and that her attempts to contact Mr. Donatoni were at Mr. Harrington's behest.

Mr. Donatoni testified that he had no contact with Mr. Harrington after the Motion for Reconsideration was denied and did not recall discussing post-sentencing options with Mr. Harrington. He acknowledged Ms. Bireley's attempts to contact him, and stated that he knew she was acting on Mr. Harrington's behalf. He testified that he received correspondence from Mr. Harrington after the motion hearing, and that it was possible Mr. Harrington had attempted to call him, although he did not recall. He noted that it is standard practice in his office not to accept collect calls when the requested attorney is not in the office. He

5

testified that neither Mr. Harrington nor Ms. Bireley communicated Mr. Harrington's desire to file a notice of appeal in their attempts to contact him. He described all such correspondence as dealing "with issues that are collateral to and not central to the issue of an appeal." Mr. Donatoni denied that he ever told Mr. Harrington he would file an appeal.

On September 24, 1999, the Pennsylvania Court of Common Pleas found Mr. Harrington's testimony to be not credible and denied him relief under PCRA. The Court stated: "We reject Defendant's testimony as credible and find that Defendant did not request counsel to file a direct appeal." In reaching its conclusion, the Court focused on the fact that "[n]owhere in the Fee Agreement does counsel agree to undertake Defendant's appeal to the Superior Court following his sentence," and that "[m]ore importantly, defense counsel testified that the Defendant never left a message instructing him to file a direct appeal." The Court of Common Pleas issued a Supplemental Opinion on October 5, 1999 to address the holding of a subsequent Pennsylvania Supreme Court case, *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999) (holding that defense counsel lacked a reasonable basis for failing to inform petitioner that sentence modification would be invalid and, thus, petitioner was entitled to PCRA relief as a remedy for defense counsel's withdrawal of appeal). Reaffirming its original opinion, the Court of Common Pleas concluded: "*Lantzy*, does not change the result in this case." The court explained that it "rejected Defendant's testimony and found that he did not request his counsel to file a direct appeal in his case."

Mr. Harrington appealed to the Pennsylvania Superior Court. It affirmed the decision of the Court of Common Pleas on July 28, 2000. In rejecting Mr. Harrington's appeal, the Superior Court relied on *Commonwealth v. Harmon*, 738 A.2d 1023 (Pa. Super. 1999). Pursuant to *Harmon*, failure to file a notice of appeal cannot constitute ineffective assistance of counsel unless the defendant asked counsel to file an appeal and

6

counsel failed to do so.[2] *Harmon*, 738 A.2d at 1024. The Superior Court quoted the Court of Common Pleas's adverse credibility finding and held: "The PCRA Court's determination of credibility is supported by the record, and therefore we will not disturb it on appeal. Trial counsel was not ineffective for failing to file a direct appeal." The Superior Court also included a footnote stating that Mr. Harrington's intended basis for relief on appeal - that his sentence was excessive - "lacks arguable merit."

Mr. Harrington petitioned for federal habeas corpus relief on July 18, 2001. In his petition, he alleged three grounds for relief: (1) that Mr. Donatoni's failure to file a notice of appeal denied him effective assistance of counsel; (2) that Mr. Donatoni's failure to file a notice of appeal denied him his right to appeal; and (3) that his sentence was excessive. The District Court for the Eastern District of Pennsylvania rejected Mr. Harrington's argument regarding his sentence as a basis for federal habeas relief because it did not involve an issue of federal law. *Harrington v. Gillis*, No. 01-CV-3617, slip op. at 1 (E.D. Pa. April 15, 2002) (approving and adopting the Report and Recommendation of the Magistrate Judge). The Court further determined: "Harrington's remaining two claims are related: that trial counsel was ineffective for failing to file a direct appeal and, as a result, he was denied his right to an appeal." Applying the standards enunciated in *Strickland v.*

---

[2] *Harmon* is a more recent enunciation of the rule expressed in *Commonwealth v. Dockins*, 471 A.2d 851, 854 (Pa. Super. 1984). Both cases can be cited for the proposition that failure to file a notice of appeal cannot constitute ineffective assistance of counsel unless the defendant asked counsel to file an appeal and counsel failed to do so. *Id.*; *Harmon*, 738 A.2d at 1024. This connection is significant because the Superior Court cited *Harmon* for the above proposition, Appellant's App. Vol. II 168-69, and *Lewis v. Johnson*, 359 F.3d 646 (3d Cir. 2004), a recent decision of this Court, held *Dockins'* expression of that same proposition contrary to federal law under the Anti-terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d). *Id.* at 659.

*Washington*, 466 U.S. 668 (1984), and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the District Court concluded:

> Considering all these facts, and the reluctance of the Pennsylvania appellate courts to consider challenges to the discretionary aspects of sentencing, this court is constrained to conclude that counsel did not have reason to think that Harrington would want to appeal, or that Harrington reasonably demonstrated to counsel that he was interested in appealing, his judgment of sentence.

With regard to factual issues, the District Court noted that in the Pennsylvania courts, "[t]o the extent that the testimony of trial counsel and Harrington was contradictory, the credibility issue was resolved in favor of trial counsel." The District Court did not disturb this credibility determination.

## II

Mr. Harrington argues that the District Court erred in concluding he was not denied the effective assistance of counsel. This Court reviews de novo the District Court's denial of habeas corpus relief. *Bamba v. Riley*, 366 F.3d 195, 198 (3d Cir. 2004). This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "which provide[s] the federal courts with specific standards for review of state court adjudications." *Fountain v. Kyler*, 420 F.3d 267, 272 (3d Cir. 2005). Under AEDPA, habeas relief with respect to a claim adjudicated on the merits in state court is only available where the state adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

8

The Supreme Court held in *Williams* that a state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999) (for a decision to be 'contrary to' federal law, "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court"). A state court decision represents an unreasonable application of federal law where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

**A**

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel. An individual making such a claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." *Id.* at 687-90.

Where the basis of a defendant's ineffective assistance claim is counsel's failure to appeal, a more specific version of the *Strickland* standard applies. *Roe v. Flores-Ortega*, 528 U.S. at 484. In *Flores-Ortega,* the Supreme Court rejected a California rule that "a habeas petitioner need only show that his counsel's failure to file a notice of appeal was without the petitioner's consent" in order to prove ineffective assistance of counsel. *Id.* at 475-76. The Court deemed any such per se rule "inconsistent with *Strickland*'s holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Id.* at 478 (quoting *Strickland*, 466 U.S. at 688).

In place of a per se rule, the Court prescribed a

9

circumstance-specific analysis. *Id.* The first step in that analysis is to determine whether counsel consulted[3] with his client regarding an appeal:

> the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal . . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id.* The Court in *Flores-Ortega* then prescribed a modified version of the *Strickland* test to determine when such failure to consult with a client regarding an appeal constitutes deficient performance:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

---

[3] The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

*Id.* at 480. A showing of either of these factors will prove deficiency and therefore satisfy the first *Strickland* prong. *Id.* at 479-80.

To satisfy the prejudice prong in *Strickland*, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. The Court identified factors that are likely to be relevant in making this determination, *id.* at 480, including whether the defendant pled guilty, *id.* at 485. The Court reasoned that a guilty plea decreases the likelihood of appealable error and may indicate the defendant's desire to end all judicial proceedings quickly. *Id.* at 480. Other factors include the trial court's instructions to the defendant regarding his right to appeal and any waiver of a right to appeal in a plea bargain agreement. *Id.* Evidence of "nonfrivolous grounds for appeal" may also help prove the second *Strickland* prong. *Id.* at 479-80. The Court also stressed that a court adjudicating a claim of ineffective assistance of counsel must take all relevant circumstances into account. *Id.* at 480, 485.

Additionally, in deciding whether the second *Strickland* prong has been satisfied, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485. Although nonfrivolous grounds may *support* a defendant's claim, it "is unfair to *require* a . . . defendant to demonstrate that his hypothetical appeal might have merit." *Id.* at 486. A defendant's inability to demonstrate potential merit "will not foreclose the possibility that he can satisfy the prejudice requirement." *Id.*

**B**

In this case, the Pennsylvania Superior Court's decision was contrary to federal law as determined by the United States Supreme Court. The Pennsylvania Superior Court reviewed Mr. Harrington's claim of ineffective assistance of counsel under *Harmon*, which stands for the proposition that "before a court will find ineffectiveness of counsel for failing to file a direct

11

appeal, Appellant must prove that he requested an appeal and that counsel disregarded this request." 738 A.2d at 1024. The Pennsylvania Superior Court held that because Mr. Harrington did not ask counsel to file an appeal, he was not denied effective assistance of counsel. The Court viewed this issue as dispositive, and did not discuss Mr. Harrington's ineffective assistance claim any further. *Id.*

The Supreme Court has definitively rejected any per se rules for adjudicating claims of ineffective assistance of counsel. *See Flores-Ortega*, 528 U.S. at 478-79 (noting that a per se rule "would be inconsistent with both our decision in *Strickland* and common sense" and that "fail[ure] to engage in the circumstance-specific reasonableness inquiry required by *Strickland* . . . alone mandates vacatur")*; Strickland*, 466 U.S. at 687-88 (stating "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances" and that "[m]ore specific guidelines are not appropriate").

In *Lewis v. Johnson*, 359 F.3d 646 (3d Cir. 2004), this Court invalidated the per se rule expressed in *Dockins*. *Id.* at 659. This Court held in *Lewis* that because the *Dockins* rule "operates in much the same manner" as the rule struck down in *Flores-Ortega,* its application to ineffective assistance claims was contrary to established federal law. *Lewis*, 359 F.3d at 659. Accordingly, the Pennsylvania Superior Court's application of the substantively identical *Harmon* rule in the instant case was contrary to clearly established federal law as determined by the Supreme Court. *See* § 2254(d).

## C

The District Court concluded that Mr. Harrington could not satisfy *Flores-Ortega*. It determined Mr. Harrington had not reasonably demonstrated his interest in an appeal to Mr. Donatoni because Mr. Harrington had pled guilty, could not explain why he did not mention an appeal in his attempts to contact trial counsel, and was aware of the thirty-day filing deadline for his right to appeal. The Court also concluded that

Mr. Harrington failed to show that a rational defendant in his situation would have sought an appeal. In so concluding, the Court relied on the determination at the PCRA proceedings that Mr. Harrington's claims on appeal had no merit and on "the reluctance of the Pennsylvania appellate courts to consider challenges to the discretionary aspects of sentencing."

After the District Court issued its judgment in this case, this Court decided *Lewis.* In *Lewis*, this Court reviewed a § 2254 petition alleging injury to the petitioner's Sixth Amendment right to effective assistance of counsel under *Flores-Ortega*. 359 F.3d at 650-51. As in the instant case, counsel failed to consult with his state-prisoner client regarding an appeal. *Id.* Mr. Lewis, like Mr. Harrington, had pled guilty and was informed of his right to an appeal by the trial court. *Id.* at 649-50. Also like the defendant in the instant matter, Mr. Lewis attempted to contact trial counsel after his sentencing hearing, but made no reference to an appeal. *Id.* Unable to reach his attorney, Mr. Lewis filed a timely pro se motion to withdraw his guilty plea. *Id.* at 650. A month later, his trial counsel filed a "bare-boned" and untimely motion to withdraw Mr. Lewis's guilty plea. *Id.* at 660-61. The trial court did not rule on the pro se motion and summarily denied trial counsel's motion. *Id.* at 650, 661. No notice of appeal was filed. *Id.* Thereafter, in addition to further attempts to contact trial counsel, Mr. Lewis wrote the Clerk of the Court, describing his lack of contact with his attorney and requesting an "extension of time, to prepare my case in the proper order." *Id.* at 661 (emphasis omitted). He also complained to the Pennsylvania State Bar Association and the Disciplinary Council that he was unable to contact trial counsel. In addition, he wrote the Clerk of the Court to inquire about the "present state, of any appeal you may have submitted to the court on my behalf, and who is the lawyer of record." *Id.*

Mr. Lewis applied for post-conviction relief under the

Pennsylvania Post Conviction Hearing Act ("PCHA"),[4] claiming ineffective assistance of counsel because trial counsel failed to appeal "despite having a meritorious argument that the guilty plea was unlawfully induced." *Id.* at 650. The Pennsylvania Court of Common Pleas held an evidentiary hearing, found Mr. Lewis to be not credible, and denied PCHA relief. *Id.* The Pennsylvania Superior Court held that the Court of Common Pleas' adverse credibility determination was supported by the record. It noted that "[t]he only evidence indicating the desire to appeal was provided in the appellant's testimony." *Id.* It denied Mr. Lewis's arguments and "adhere[d] to the holding in *Dockins*." *Id.*

In denying habeas corpus relief, the district court did not address the issue of ineffective assistance of counsel. *Id.* at 651. This Court reversed. It held that (1) *Flores-Ortega* constitutes "clearly established federal law" and is "old" under *Teague v. Lane*, 489 U.S. 288 (1989), *Lewis*, 359 F.3d at 653-654, 657; (2) the *Dockins* rule is contrary to clearly established federal law, *id.* at 659; and (3) Mr. Lewis had satisfied the *Strickland* standard as set forth in *Flores-Ortega*, *id.* at 660.

After holding the *Dockins* rule unconstitutional, this Court stated that under normal circumstances, it would remand. *Id.* However, the Court instead determined the record was sufficient to consider the merits of Mr. Lewis's claim under the *Flores-Ortega* test. *Id.* This Court concluded that "it is clear that [counsel] did not meet with Lewis or otherwise attempt to contact him after the sentencing proceeding or the post-trial motion was denied *although Lewis indicated an interest in challenging his conviction*. *Id.* (emphasis added). This Court went on to note:

> [T]his record compels a finding that trial counsel's conduct was objectively unreasonable. We can

[4] The PCHA is the predecessor of the PCRA and was superceded by the PCRA on April 13, 1988. *Lewis*, 359 F.3d at 650 n.1.

14

think of no strategic reason to explain why [counsel] failed to follow-up with Lewis either following the sentencing or after the trial court denied the motion to withdraw, and the Commonwealth offers none. The ultimate decision to appeal rests with the defendant. Thus, even if [counsel] concluded that any appeal would be frivolous, he could not disregard the evidence of Lewis's unequivocal desire to challenge his sentence and guilty plea, and abandon his client at this critical stage in the proceedings.

*Id.* at 661 (citation omitted). This Court based this conclusion on trial counsel's testimony that he did not remember speaking to Mr. Lewis after sentencing and that Mr. Lewis likely had difficulty contacting him. *Id.* at 660. The Court observed that the two motions to withdraw Mr. Lewis' guilty plea "should have put [counsel] on notice that Lewis may have been interested in appealing." *Id.* The Court also noted that although the foregoing evidence was sufficient to satisfy the first *Strickland* prong, additional evidence existed to "buttress" its conclusion: "Trial counsel's testimony, coupled with the bare-boned post-trial motion to withdraw the guilty plea that he filed 28 days late, evidences an inattention to his client's interests, a neglect which caused Lewis to forfeit his right of appeal." *Id.* at 660-61. This Court went on to explain that "[w]hile trial counsel's testimony alone supports this finding, our decision is further buttressed by the contemporaneous evidence of Lewis's attempt to timely assert his appellate rights." *Id.* at 661. The "contemporaneous evidence" consisted of Mr. Lewis's correspondence with the Clerk of the Court and the Pennsylvania State Bar and the Disciplinary Counsel. *Id.* at 661.

As to the second *Flores-Ortega* prong, the Court held that "Lewis has demonstrated that there is a reasonable probability that, but for counsel's deficient performance, he would have appealed. The contemporaneous evidence of Lewis's desire to challenge his conviction satisfies this requirement." *Id.* The Court again noted that additional evidence - Mr. Lewis's showing of nonfrivolous grounds for appeal - buttressed the

15

Court's conclusion. *Id.* at 660-61.

**D**

As we have indicated, the District Court concluded that Mr. Harrington had not "reasonably demonstrated to counsel that he was interested in appealing."[5] Our review of the record indicates that the most reasonable conclusion to be drawn from consideration of all of the circumstances in accordance with the teachings of *Lewis* and *Flores-Ortega* is that Mr. Harrington reasonably demonstrated an interest in appealing. Given our determination of that issue, we further conclude that Mr. Harrington is entitled to develop a record and secure a finding on whether he would have appealed had his attorney given him the counsel to which he was entitled.

The District Court in this case failed to consider all the relevant circumstances as required by *Flores-Ortega*. Pursuant to *Flores-Ortega*, "courts must take into account all information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480. "Only by considering all relevant factors in a given case can a court properly determine whether . . . the particular defendant sufficiently demonstrated to counsel an interest in appeal." *Id.*; *see also Strickland*, 466 U.S. at 688, 695-96 ("the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances").

Most notably, the District Court's order fails to reference Mr. Donatoni's letter to Mr. Harrington. After Mr. Harrington's motion for reconsideration was denied, Mr. Donatoni wrote a letter to Mr. Harrington in which he stated: "Obviously, none of us are [sic] happy with this and we will have to speak about what

---

[5]The District Court concluded as well that Mr. Harrington had not demonstrated that a rational defendant would have believed there were non-frivolous grounds for appeal. Given our conclusion on Mr. Harrington's alternative ground for establishing counsel's deficient performance under *Flores-Ortega*, we do not reach this issue.

16

options are available." After he received this letter from his counsel, Mr. Harrington called Mr. Donatoni "half a dozen times" himself and attempted to contact Mr. Donatoni through Ms. Bireley. He testified that he was able to leave only one message because Mr. Donatoni's office accepted his collect calls from prison only once. Ms. Bireley testified that she and Mr. Harrington were in contact throughout this period. When they spoke, they "didn't discuss anything but the case" because Mr. Harrington wanted to appeal his sentence. Ms. Bireley testified that she called Mr. Donatoni "almost daily, Monday through Friday . . . if there were days I missed, it was only because I couldn't make the phone call at work." *Id.* at 125. She faxed a letter to Mr. Donatoni in which her frustration is palpable:

> In the past week and a half I have left five messages for you to contact me or Sam. More importantly Sam. He needs to talk with you concerning this situation. . . . [Ms. Bireley "also" raises two other issues regarding filing bankruptcy and a house sale before concluding the letter]. I know you are very busy and there are some real questions and problems that need to be answered. You have been our only legal person to talk to. All I am asking is a call to answer some of the questions that Sam has.

*Id.* at 182.

At the PCRA hearing, Mr. Donatoni never contested that he received numerous messages and Ms. Bireley's fax. Rather, he disputed their content. Mr. Donatoni did contest the portion of Mr. Harrington's testimony in which Mr. Harrington claimed that Mr. Donatoni promised to represent him "all the way to the Supreme Court if necessary at no extra charge to me" – testimony the Court of Common Pleas subsequently found to be not credible. But the Court of Common Pleas did not disbelieve the testimony regarding Ms. Bireley and Mr. Harrington's attempts to contact Mr. Donatoni. In fact, the Court of Common Pleas cited Ms. Bireley's testimony for corroboration of its conclusion that Mr. Donatoni never received an explicit request

17

to appeal.

It is undisputed that Mr. Donatoni suggested that Mr. Harrington contact him "to speak about what options are available" after the motion for reconsideration was denied. Mr. Donatoni received numerous messages that Mr. Harrington was attempting to contact him. "[A]ll the information counsel knew or should have known," *Flores-Ortega*, 528 U.S. at 480, "should have put [counsel] on notice that [Mr. Harrington] may have been interested in appealing." *Lewis*, 359 F.3d at 660.

In *Lewis*, the defendant also evinced an interest in appealing by filing a pro se motion, a step Mr. Harrington did not take. However, in *Lewis*, this Court noted that "trial counsel's testimony alone supports [the] finding" that the client had demonstrated an interest in appealing. *Lewis*, 359 F.3d at 661. This Court noted that this conclusion was "further buttressed by the contemporaneous evidence of Lewis's attempt to timely assert his appellate rights." *Id.* In *Lewis*, this Court did not require that clients go it alone in the legal system before they can be found to have demonstrated to their attorneys their interest in appealing. The factual account of this case sufficiently demonstrates Mr. Harrington's interest in appealing.

The second prong of the *Flores-Ortega* analysis asks whether there is "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. On this point, the evidence in Mr. Harrington's case is less clear than the evidence in *Lewis*. Thus, instead of granting relief, we remand to the District Court to consider whether Mr. Harrington would have appealed his conviction had Mr. Donatoni rendered constitutionally adequate performance.

We should caution that this inquiry should not solely be determined by the relative strength of any arguments Mr. Donatoni would have made on appeal. On remand, the District Court should not treat the perceived weakness of Mr. Harrington's arguments on appeal as a negative threshold requirement in deciding whether he would have appealed after

18

receiving the benefit of counsel. The goal "of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, . . . [but rather] simply to ensure that criminal defendants receive a fair trial." *Flores-Ortega,* 528 U.S. at 481 (quoting *Strickland*, 466 U.S. at 689). The Sixth Amendment is equally violated when a defendant is summarily denied access to an uncertain appeal and to a strong appeal; either might affect the fairness of the trial. *See id.* at 482-83. "Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings." *Rodriquez v. United States*, 395 U.S. 327, 330 (1969).

Drawing on these concepts, the Supreme Court in *Flores-Ortega* "similarly conclude[d] . . . that it is unfair to *require* an indigent, perhaps *pro se* defendant, to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." *Flores-Ortega*, 528 U.S. at 486 (emphasis in original). Although *Flores-Ortega* states that non-frivolous grounds for appeal is a potentially relevant factor in adjudicating a case pursuant to *Strickland*, this factor is not necessarily dispositive. *Id.* at 480, 485-86. This Court has described non-frivolous grounds for appeal as one possible way a defendant might prove a rational defendant in his situation would have appealed, not as requirement for proving this. *Id.* at 480. In the context of the prejudice prong, "although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to 'specify the points he would raise were his right to appeal reinstated' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe he would have appealed." *Id.* at 486 (quoting *Rodriquez*, 395 U.S. at 330) (internal citation omittted).

By contrast, the District Court discussed the merits of Mr. Harrington's appeal as follows:

> [T]he Superior Court considered the merits of Harrington's claim that his sentence was excessive and concluded that the claim was without merit.
>
> Considering all these facts, and the reluctance of the Pennsylvania appellate courts to consider challenges to the discretionary aspects of sentencing, this court is constrained to conclude that counsel did not have reason to think Harrington would want to appeal, or that Harrington reasonably demonstrated to counsel that he was interested in appealing, his judgment of sentence.

The District Court thus put too much weight on the strength of Mr. Harrington's arguments on appeal as a negative threshold requirement.

The Pennsylvania Superior Court's decision was contrary to clearly established federal law in concluding that Mr. Harrington was required to demonstrate he explicitly requested his counsel to file an appeal. The District Court, although applying the *Flores-Ortega* factors incorrectly concluded that Mr. Harrington failed to demonstrate reasonably his desire to appeal, and incorrectly treated as dispositive the potential merit of Mr. Harrington's appeal.

## E

At oral argument, the State contended the only potential issue for appeal was related to the discretionary aspects of the sentence Mr. Harrington received. Citing *Ross v. Moffitt*, 417 U.S. 600 (1974), the State argued that an indigent defendant has no right to the effective assistance of counsel to file an application for leave to file an appeal from a discretionary sentence.

In *Ross*, the Supreme Court held that a State is not required to appoint counsel to aid an indigent defendant in seeking to pursue a second-tier discretionary appeal to the State's highest court, or thereafter, certiorari review in the

20

Supreme Court. *Ross*, 417 U.S. at 610-12, 615-18. The Court reasoned that error correction is not the reviewing court's primary function at those stages. *Id.* at 615.

This case is distinguishable from the circumstances present in *Ross*. This distinction is made clear by the Supreme Court's decision in *Halbert v. Michigan*, 125 S. Ct. 2582 (2005). In *Halbert*, an amendment to Michigan's constitution provided that a defendant who pled guilty or nolo contendere could appeal to the Michigan Court of Appeals only by leave of that court. *Id.* at 2586. Michigan put into place a procedure whereby a defendant convicted by plea was required to file an application for leave to appeal with the Michigan Court of Appeals. *Id.* at 2588. The court then could "'grant or deny the application; enter a final decision; [or] grant other relief.'" *Id.* (quoting Mich. Ct. Rule 7.205(D)(2)). If the court granted leave, the case would proceed as an appeal of right. *Id.* The Michigan Court of Appeals routinely cited "lack of merit in the grounds presented" as a basis for denying leave to appeal. *Id.* Michigan did not allow appellate counsel to be appointed to indigent defendants for the purpose of seeking leave to appeal. *Id.*

The Supreme Court determined in *Halbert* that Michigan's failure to provide for counsel for purposes of seeking leave to appeal violated indigent defendants' rights to due process and equal protection. *Id.* at 2587. The Court reasoned that although the defendants were not entitled to an appeal as of right, they were "entitled to apply for leave to appeal." *Id.* at 2590. "Of critical importance," the Court noted, was that "the tribunal to which [a defendant] addresses [his or her] application, the Michigan Court of Appeals, unlike the Michigan Supreme Court, sits as an error-correction instance." *Id.* Additionally, in determining whether to grant leave to appeal, the Michigan Court of Appeals necessarily considered "the merits of the applicant's claims." *Id.* at 2591.

The Supreme Court distinguished Michigan's procedure from that at issue in *Ross*. In *Ross*, the Court recognized that "leave-granting determinations . . . turned on considerations other than the commission of error by a lower court, *e.g.*, the

21

involvement of a matter of 'significant public interest.'" *Id.*

> By contrast, the Michigan Court of Appeals, because it is an error-correction instance, is guided in responding to leave to appeal applications by the merits of the particular defendant's claims, not by the general importance of the questions presented. Whether formally categorized as the decision of an appeal or the disposal of a leave application, the Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely the only, direct review the defendant's conviction and sentence will receive.

*Id.*

The procedure at issue in this case, like that at issue in *Halbert*, involves an initial determination of the merits of the appeal by the Superior Court of Pennsylvania. Therefore, a defendant is entitled to an attorney for purposes of seeking allowance of appeal. *See Halbert*, 125 S. Ct. at 2594. Furthermore, the need for the assistance of an attorney with this procedure is particularly acute. With regard to an appeal of right, an attorney must perform only the ministerial task of filing a notice of appeal in order to secure the rights of his or her client to be heard. With regard to Pennsylvania's procedure, however, such a ministerial task does not suffice to preserve a defendant's rights. Rather, from the outset, a case must be made for the merits of the appeal. A defendant is likely to require assistance in making this initial case.

Because an appeal is a critical stage of criminal proceedings, a defendant is entitled to the effective assistance of counsel in perfecting an appeal. *See Flores-Ortega*, 528 U.S. at 483. Mr. Donatoni failed to discuss with his client the Pennsylvania procedure that must be followed to exercise the option of appealing from a discretionary sentence. He failed to inform Mr. Harrington that he was required to clear a substantial legal hurdle in order to assert his right to appeal. This deficient performance possibly deprived him of an appellate review of his

22

contentions in violation of his Sixth Amendment rights. *Id.*

## CONCLUSION

For the foregoing reasons, we will vacate the decision of the District Court and remand to the Court for proceedings consistent with this opinion.